**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Philip Seldon, | No. CV-13-00072-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Edward Magedson, et al., | |
| Defendants. | |

Plaintiff Philip Seldon has filed a motion to amend his first amended complaint. Doc. 45.  Defendant Xcentric Ventures LLC ("Xcentric") has responded and no party has requested oral argument.  The Court will deny the motion.

Xcentric has filed a motion for summary judgment. (Doc. 38)  The motion is fully briefed and no party has requested oral argument.  The Court will grant the motion.

**I.      Background.**

Xcentric operates Ripoffreport.com, which is a website where third parties can post online complaints, reviews, reports of fraud, and similar material.  Plaintiff's complaint names Edward Magedson, Xcentric, Ripoffreport.com, Cheyenne Crow, Irina Borisenko, and a number of John and Jane Does as defendants.  Plaintiff alleges that Defendants Crow and Borisenko posted false and defamatory reports about him on Ripoffreport.com.  Plaintiff also alleges that Xcentric employees intercept and review each post submitted by third parties to Ripoffreport.com and determine whether a post should be included on the website.  Because Xcentric's employees sift through potential

1   posts and determine which posts to publish on the website, Plaintiff alleges that Xcentric

2   may be liable for defamatory statements posted by third parties.

3       Plaintiff also alleges that he entered into an agreement with Xcentric on

4   August 24, 2011, wherein he agreed to trade domain names for advertising on Xcentric's

5   website.  The complaint alleges that Xcentric has refused to honor the agreement.

6       Plaintiff's complaint asserts seventeen counts alleging, among other things, breach

7   of contract, defamation, and intentional infliction of emotional distress.

8   **II.     Motion to Amend the First Amended Complaint.**

9       Plaintiff has filed a motion for leave to amend the first amended complaint.

10  Doc. 45.   Plaintiff asserts that he wishes to supplement his complaint with "newly

11  obtained information."  *Id*. at 1.  In Plaintiff's first amended complaint, he alleged that

12  the reports on Defendant's website were "protected by the Communications Decency

13  Act."  Doc. 11 at Doc. 46 at 1.  Plaintiff asserts that he has learned that the website is

14  actually not protected by the Communications Decency Act ("CDA").  Doc. 46 at 2.

15  Plaintiff seeks leave to correct his previous reference to the CDA.  For several reasons,

16  the Court will deny the motion.

17      The deadline for filing amended pleadings expired in June of last year.   Doc. 18.

18  Deadlines established in case management orders may "be modified only for good

19  cause[.]"  Fed. R. Civ. P. 16(b)(4); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

20  604, 608 (9th Cir. 1992) ("The scheduling order 'controls the subsequent course of the

21  action' unless modified by the court.") (quoting Fed. R. Civ. P. 16(a)).  Good cause exists

22  when a deadline "cannot reasonably be met despite the diligence of the party seeking the

23  amendment."  *Johnson*, 975 F.2d at 609; *see also Coleman v. Quaker Oats Co.*, 232 F.3d

24  1271, 1294 (9th Cir. 2000).

25      Plaintiff asserts that he did not learn that the website was not covered by the CDA

26  until he had a conversation with a private investigator, but he does not explain why he

27  was unable to discover the same information through reasonable diligence on his own.

28  Indeed, Plaintiff does not address the reasonable diligence requirement of the good cause

1    inquiry.  The Court concludes that the amendment deadline could have been met through

2    reasonable diligence. The Court therefore will deny Plaintiff's cross-motion for leave to

3    amend.

4            The Court also concludes that Plaintiff's proposed amendment would not add any

5    meaningful allegations to his complaint.  Plaintiff's amended complaint already asserts a

6    defamation claim against Defendants.  Removing a reference to the CDA will not alter

7    this claim, nor will the Court rely on Plaintiff's allegation of law regarding the CDA in

8    deciding this case.

9            Finally, as with his previous unsuccessful effort to amend his complaint (Doc. 27),

10   Plaintiff has again failed to file a redlined version as required by Local Rule 15.1(a).

11   Doc. 27 at 2-3.

12   **III.    Motion for Summary Judgment.**

13           **A.    Legal Standard.**

14           A party seeking summary judgment "bears the initial responsibility of informing

15   the district court of the basis for its motion, and identifying those portions of [the record]

16   which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

17   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the

18   evidence, viewed in the light most favorable to the nonmoving party, shows "that there is

19   no genuine dispute as to any material fact and the movant is entitled to judgment as a

20   matter of law." Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the

21   outcome of the suit will preclude the entry of summary judgment, and the disputed

22   evidence must be "such that a reasonable jury could return a verdict for the nonmoving

23   party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

24           **B.    Evidence in Support of Defendants' Motion.**

25           Plaintiff asserts that "Defendant's Motion for Summary Judgment is based on

26   speculative and unsupported representations of defendant's attorney, Maria Crimi Speth,

27   which are unsworn" and "not supported by any affidavits by any representative of

28   Xcentric" or Edward Magedson.  Doc. 43 at 1.  Plaintiff asserts the Defendant's motion is

- 3 -

1   "not properly submitted or presented to this court." *Id*.  Plaintiff is incorrect.  The Court

2   may consider any admissible evidence – not just affidavits – submitted by the moving

3   party when ruling on a motion for summary judgment. *See Orr v. Bank of Am., NT & SA*,

4   285 F.3d 764, 773 (9th Cir. 2002).  Rule 56 specifically authorizes the Court to consider

5   "materials in the record, including depositions, documents, electronically stored

6   information, affidavits or declarations, stipulations (including those made for purposes of

7   the motion only), admissions, interrogatory answers, or other materials" in ruling on the

8   motion for summary judgment.  Fed. R. Civ. P. 56(c)(1)(A).  A party seeking summary

9   judgment is not required to submit affidavits. *Celotex*, 477 U.S. at 323.

10   **C.   L.R. Civ. 56.1.**

11   Local Rule of Civil Procedure 56.1(b) requires a party opposing summary

12   judgment to provide, among other things:

13

14   > A statement . . . setting forth . . . for each paragraph of the
>   moving party's separate statement of facts, a correspondingly
>   numbered paragraph indicating whether the party disputes the

15   > statement of fact set forth in that paragraph and a reference to
>   the specific admissible portion of the record supporting the

16   > party's position if the fact is disputed[.]

17   LRCiv 56.1(b).

18

19   The Court has previously advised Plaintiff that he must comply with the Court's

20   local rules, and has advised him on how to obtain a copy. *See, e.g.,* Doc. 27.  Plaintiff

21   nonetheless did not comply with Local Rule 56.1.  He instead filed a five-page response

22   to Defendant's lengthy motion for summary judgment and statement of facts, making

23   several general arguments in opposition to Defendants' motion.  Although the Court will

24   not deem Xcentric's entire statement of facts to be admitted, the Court may consider

25   certain facts undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e).  A "district

26   court does not have a duty to search for evidence that would create a factual dispute."

27   *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007); *see also Carmen v. S.F. Unified*

28   *Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that it would be unfair to the

1    district court to require it to search the entire record if a party fails to disclose where in

2    the record the evidence can be found).

3            **D.    Analysis.**

4            Plaintiff's seventeen-count complaint does not clearly identify which count

5    addresses which defendant.  Plaintiff's deposition testimony, however, reveals that only

6    the first, second, third, fourth, and seventeenth counts apply to Xcentric.  Doc. 39-1 at

7    108-10.  Xcentric seeks summary judgment on each of these counts.

8            **1.    First Count: Breach of Contract.**

9            Xcentric argues that a contract never existed between Xcentric and Plaintiff

10   because there was never a meeting of the minds on the essential terms of the contract.

11   Doc. 38 at 4.  "For an enforceable contract to exist, there must be an offer, an acceptance,

12   consideration, and sufficient specification of terms so that the obligations involved can be

13   ascertained."  *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991).  In Arizona, "[i]t

14   is well-established that before a binding contract is formed, the parties must mutually

15   consent to all material terms."  *Hill-Shafer P'Ship v. Chilson Family Trust*, 799 P.2d 810,

16   814 (Ariz. 1990).  "The requirement of certainty is relevant to the ultimate element of

17   contract formation, i.e., whether parties manifested assent or intent to be bound."  *Rogus*,

18   804 P.2d at 135 (citing *Schade v. Diethrich*, 760 P.2d 1050, 1058 (Ariz. 1988)).

19           In Plaintiff's deposition, he stated that he entered into a binding agreement in a

20   "short couple minutes conversation" over the phone with Defendant Magedson, who

21   operates Xcentric.  Doc. 39-1 at 58.  The parties ostensibly agreed that Plaintiff would

22   transfer one of his unused domain names to Xcentric in exchange for advertising space on

23   Ripoffreport.com.  *Id*. at 56-57.  The parties did not specify which domain name Plaintiff

24   would give to Xcentric.  *Id*. at 57.  Plaintiff also testified that the parties did not agree to

25   which entity the advertising space would be allocated; instead, Plaintiff claimed that he

26   bargained for advertising space to be used for whatever purpose he wanted.  *Id*. at 58-60.

27           Even accepting Plaintiff's description of the agreement, the Court concludes that

28   no contract existed as a matter of law.  In *Savoca Masonry v. Homes & Son Construction*

- 5 -

1    *Company*, 542 P.2d 817, 820 (Ariz. 1975), the Arizona Supreme Court held that an

2    agreement was not binding because it lacked terms essential to a contract.  The court

3    reasoned that an enforceable contract did not exist because "such essentials, as manner of

4    payment, time for completion . . . , penalty provisions, bonding, etc.," were not agreed

5    upon. *Id*.  The court stated that "only price and work involved were agreed upon . . . .  A

6    sufficient mutual understanding as to *all* terms of the contract did not exist."  *Id*.

7    (emphasis added).

8           The agreement as described by Plaintiff fails for the same reason.  It lacks many

9    essential terms.  Plaintiff asserts that the parties agreed to a price, but he does not allege

10   that that there was any agreement as to timing of the exchange, the domain name he

11   would provide, or the amount or nature of the advertising he would receive.[1]

12          Plaintiff states in his response that he possesses a tape recording of a phone

13   conversation with Defendant Magedson that would enable a reasonable jury to find that

14   there was a meeting of the minds on the essential terms of the agreement.  Because

15   Plaintiff has not submitted this tape to the Court with his response to the summary

16   judgment motion, the Court cannot consider the evidentiary value of the recording.

17          Viewing the evidence in a light most favorable to Plaintiff, the Court concludes

18   that no contract existed because the alleged agreement lacked essential contract terms.

19                      **2.      Second Count: Defamation.**

20          Plaintiff's second cause of action alleges that Xcentric defamed him on

21   Ripoffreport.com.  Plaintiff alleges that third parties submitted defamatory information

22   about him to the website, and that Xcentric participated in the defamation by creating the

23   file heading "philip-seldon │ Ripoff Report │ Complaints Reviews Scams Lawsuits

24   Frauds Reported," which introduced the defamatory statements.  Doc. 11 at 4.

25          To establish defamation, Plaintiff must prove that Xcentric made a false and

26   defamatory statement concerning Plaintiff.  *Morris v. Warner*, 770 P.2d 359, 366 (Ariz.

27

28          [1] In a response to an interrogatory, Plaintiff asserted that Xcentric promised to
     provide advertising space for one year.  Doc. 39-2 at 45.  He did not, however, identify
     when the advertising agreement was to begin or end.

- 6 -

1    Ct. App. 1988).  Xcentric argues that Plaintiff has failed to make a prima facie case of

2    defamation because Xcentric did not make any defamatory statements.  Doc. 38 at 6.

3           Section 230 of the CDA immunizes providers of interactive computer services

4    against liability arising from content created by third parties.  The CDA provides that

5    "[n]o provider or user of an interactive computer service shall be treated as the publisher

6    or speaker of any information provided by another information content provider."  47

7    U.S.C.  §  230(c)(1).   The CDA's grant of immunity applies only if the interactive

8    computer service provider is not also an "information content provider," which is defined

9    as someone who is "responsible, in whole or in part, for the creation or development of"

10   the offending content.  *Id*. § 230(f)(3); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*,

11   No. 07-956-PHX-FJM, 2007 WL 2949002, at *3 (D. Ariz. Oct. 10, 2007) ("[T]he CDA

12   protects website operators from liability as publishers, but not from liability as authors.").

13   "A website operator can be both a service provider and a content provider."  *Fair Hous.*

14   *Council of San Fernando Valley v. Roomates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir.

15   2008).  If the website operator passively displays content submitted by third parties, then

16   it is only a service provider with respect to that content.  *Id*.  But the website operator is

17   responsible for content that it creates itself or that it is "responsible," in whole or in part,

18   for creating or developing.  *Id*.  "Thus, a website may be immune from liability for some

19   of the content it displays to the public but be subject to liability for other content."  *Id*. at

20   1162-62.

21          Plaintiff argues that Xcentric is not entitled to any immunity under the CDA

22   because "ripoffreport.com has a staff of reviewers who intercept and review each and

23   every report submitted to its website and decide whether or not to permit the report to be

24   included on the website and whether or not to post the report as submitted or to modify it

25   by redacting content or modifying the content which they do for numerous postings."

26   Doc. 43 at 4.  Xcentric's efforts to screen content submitted by third parties does not

27   disqualify it from immunity under the CDA.  *Roomates.com*, 521 F.3d at 1170-71

28   ("[A]ny activity that can be boiled down to deciding whether to exclude material that

1     third parties seek to post online is perforce immune under section 230."); *Carafano v.*

2     *Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("[S]o long as a third party

3     willingly provides the essential published content, the interactive service provider

4     receives full immunity regardless of the specific editing or selection process.").

5            Plaintiff acknowledged in his deposition that the substance of each post on

6     Ripoffreport.com was authored by a third party.  Doc. 39-1 at 78-88, 111.  Plaintiff

7     argues, however, that Xcentric can be liable for defamation because it generated the file

8     name and directory page that enables a third party's defamatory statements to be

9     searchable and more accessible.  Plaintiff does not dispute that the information contained

10    in Xcentric's directory page and each individual file name is automatically generated by a

11    software program that populates criteria based on a third party's inputs.  *Id*. at 77-88.

12    Such activity does not eliminate Xcentric's CDA immunity.

13           In *Carafano*, an anonymous user from Berlin opened an account in the Los

14    Angeles section of the commercial dating site Matchmaker.com and completed a detailed

15    questionnaire containing both multiple-choice and essay questions posing as the actress

16    Christianne Carafano.  The anonymous user's responses represented that Carafano was

17    "looking for a one-night stand" and that she yearned to find a "hard and dominant man"

18    with a "strong sexual appetite" and that she "liked sort of being controlled by a man, in

19    and out of bed."  339 F.3d at 1121.  The fictitious profile included an email address that,

20    when contacted, produced an automatic e-mail reply stating, "You think you are the right

21    one?  Proof it!! [sic]," and providing Carafano's home address and telephone number.  *Id*.

22    Carafano received sexually explicit phone, fax, and email messages that were degrading,

23    threatening, and offensive.

24           Carafano sued Matchmaker.com, alleging invasion of privacy, misappropriation of

25    the right of publicity, defamation, and negligence.  *Id*.  The Ninth Circuit held that

26    Matchmaker.com enjoyed full CDA immunity because, among other things, it had not

27    provided any of the defamatory content.  *Id*. at 1123.  The Ninth Circuit concluded that

28    CDA immunity applied notwithstanding the fact that "some of the content was

1    formulated in response to Matchmaker's questionnaire."  *Id*.  "Doubtless, the

2    questionnaire facilitated the expression of information by individual users.  However, the

3    selection of the content was exclusively that of the user . . . .  Matchmaker cannot be

4    considered an 'information content provider' under the statute because no profile has any

5    content until a user actively creates it."  *Id*.

6    Xcentric is entitled to CDA immunity for the same reasons.  The fact that Xcentric

7    facilitated defamation in some attenuated way by providing software that automatically

8    published and filed a third party's statements does not undercut Xcentric's claim to

9    immunity under the CDA.  Xcentric is not responsible for the alleged defamatory

10   statements of third parties just because Xcentric provides a forum where third parties

11   might mischaracterize Plaintiff's conduct.  Xcentric is not the "information content

12   provider" with respect to the defamatory statements because it neither produced nor

13   endorsed any of the content of the defamatory posts.

14   Viewing the evidence in a light most favorable to Plaintiff, the Court concludes

15   that Plaintiff has failed to make a prima facie showing of defamation.  Xcentric did not

16   make false or defamatory statements..

17   **3.    Third Count: Intentional Infliction of Emotional Distress.**

18   Plaintiff's third cause of action alleges that he is "afflicted with Tourettes [sic]

19   Syndrome which [makes] him particularly sensitive to bullying" and that he was

20   particularly susceptible to harm from the defamatory posts because he was "severely

21   bullied as a young child and teenager."  Doc. 11 at 7.  Plaintiff alleges that Xcentric

22   refused a generous settlement offer "preferring to spend enormous sums to defend

23   litigation so that they could continue their cyberbullying and harassment."  *Id*.  Plaintiff

24   also alleges that Defendant Magedson sent him an email containing the following threat:

25   "Also.. once you serve that suit? .. it will be searchable
26   forever and, even if I removed the comments by doing a
     ((REDACT)) as explained above... those sexual comments
27   will be on the internet forever and will come up whenever
28   someone searches your name… how do like them apples!

1
2

> I have spent millions and now in recent years I get *people like you* to pay me back … you will too.

3

> cut your losses … I could care less what you do."

4

*Id.* at 8 (emphasis added).

5
6

In his deposition, Plaintiff also alleged that Xcentric and Defendant Magedson caused emotional distress by publishing the "aspx" file, representing that Xcentric would remove posts and then not removing them, calling him insulting names that he could not remember by the time of his deposition, cutting off communication with him, calling him "undesirable," and referring to him as "people like you" in the email communication quoted above.  Doc. 39-1 at 94-97.  Plaintiff was particularly distressed by the "people like you" reference because he believes that term is used as a reference to "black people and to Jews and to Muslims."  *Id*. at 97.  Plaintiff asserts that Xcentric's conduct is "extreme and outrageous conduct that intentionally and/or recklessly caused severe emotion distress . . . and which so transcended and exceeded all bounds of decency as to be regarded as atrocious and intolerable in a civilized society."  Doc. 11 at 8.

7
8
9
10
11
12
13
14
15
16

In order to recover damages for intentional infliction of emotional distress, a plaintiff must demonstrate: (1) "extreme" and "outrageous" conduct by the defendant; (2) that the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result from his conduct; and (3) that the plaintiff suffered severe emotional distress as a result of the defendant's conduct.  *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (citing Restatement (Second) of Torts § 46(1) (1965)).  To establish the first element, a plaintiff must show that the defendant's acts were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citing *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)).  As explained in *Midas Muffler Shop v. Ellison*:

17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5

> [L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

6
7

650 P.2d 496, 500 (Ariz. Ct. App. 1982) (citing Restatement (Second) of Torts § 46 cmt. d (1965)).

8
9
10
11
12
13
14
15

Plaintiff's claim for intentional infliction of emotional distress must fail as a matter of law.  Although Xcentric and Defendant Magedson were unkind, indelicate, and curt with Plaintiff on a number of occasions, none of the conduct alleged by Plaintiff was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz*, 905 P.2d at 563.  Viewing the evidence in a light most favorable to Plaintiff, the Court concludes that summary judgment should be entered in Xcentric's favor.

16

### 4.   Fourth Count.

17
18
19
20
21
22

It is unclear what cause of action Plaintiff pleads in his fourth count.  The count re-alleges substantially identical facts to those set forth in the third count, but then asserts that Xcentric's actions "constitute harassment and cyberbullying" that "has been done with malice." Doc. 11 at 11.  Plaintiff stated in his deposition that his fourth count was a duplicate of his third count.  Doc. 39-1 at 126.  The Court will accept Plaintiff's statement and grant summary judgment in Xcentric's favor as to count four.

23

### 5.   Seventeenth Count.

24
25
26
27
28

Plaintiff's seventeenth count merely demands that Xcentric and Defendant Magedson turn over the identities, street addresses, IP addresses, and telephone numbers of various John and Jane Does who participated in Ripoffreport.com forums about Plaintiff.  The seventeenth count is a demand for relief without accompanying facts or legal theories.  The Court will grant summary judgment in Xcentric's favor.

1

**IT IS ORDERED**:

2

1.      Plaintiff's motion to amend (Doc. 45) is **denied**.

3

2.      Defendant Xcentric's motion for summary judgment (Doc. 38) is **granted**.

4

Dated this 15th day of April, 2014.

5

6

7

_David G. Campbell_

8

_____

David G. Campbell
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28